UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DALE MORGAN,                                    Case No. 09-12140

                Plaintiff,                      Patrick J. Duggan
v.                                              United States District Judge

COMMISSIONER OF                                 Michael Hluchaniuk
SOCIAL SECURITY,                                United States Magistrate Judge

                Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 10)

### I.      PROCEDURAL HISTORY

        A.      <u>Proceedings in this Court</u>

        On June 3, 2009, plaintiff filed the instant suit seeking judicial review of the

Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to

28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Patrick J.

Duggan referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of disability and

disability insurance benefits.  (Dkt. 3).  This matter is currently before the Court on

cross-motions for summary judgment.  (Dkt. 9, 10).

B.     Administrative Proceedings

Plaintiff filed the instant claims on February 15, 2005, alleging that he became unable to work on September 28, 2003.  (Dkt. 8, Tr. at 66).  The claim was initially disapproved by the Commissioner on February 8, 2006.  (Dkt. 8, Tr. at 53).  Plaintiff requested a hearing and on June 19, 2008, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Michael D. Quayle, who considered the case *de novo*.  In a decision by the Appeals Council dated July 23, 2008, the ALJ found that plaintiff was not disabled.  (Dkt. 8, Tr. at 18-27). Plaintiff requested a review of this decision on July 28, 2008.  (Dkt. 8, Tr. at12). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-1, Dkt. 8, Tr. at 350-353), the Appeals Council, on May 6, 2009, denied plaintiff's request for review.  (Dkt. 8, Tr. at 6-8); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

For the reasons set forth below, the undersigned **RECOMMENDS** that the plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED** and that the findings of the Commissioner be **REVERSED**.

## II.  FACTUAL BACKGROUND

### A.  ALJ Findings

Plaintiff was 40 years of age at the time of the most recent administrative hearing.  (Dkt. 8, Tr. at 66).  Plaintiff's relevant work history included approximately 15 years as a laborer.  (Dkt. 8, Tr. at 73).  In denying plaintiff's claims, the ALJ considered degenerative disc disease of the lumbar spine; left rotator cuff tear with AC joint arthrosis; carpal tunnel syndrome; right chronic lateral epicondylitis; panic disorder; and depressive disorder as possible bases of disability.  (Dkt.8, Tr. at 20).  Plaintiff was insured through December 31, 2008, and thus must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.  (Dkt. 8, Tr. at 18).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since September 28, 2003.  (Dkt. 8, Tr. at 20).  At step two, the ALJ found that plaintiff's impairments were "severe" within the meaning of the second sequential step.  *Id*. At step three, the ALJ found no evidence that plaintiff's combination of

impairments met or equaled one of the listings in the regulations. *Id.* At step four, the ALJ found that plaintiff could not perform any past relevant work. (Dkt. 8, Tr. at 26). At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. *Id.*

B.    <u>Plaintiff's Claims of Error</u>

Despite citing all of the objective findings set forth the records of Dr. Ahmad, the evaluation of Dr. Best and other hospital records, the Administrative Law Judge indicated there were no objective findings to support the level of disability plaintiff claimed and Drs. Ahmad and Best set forth in their Physical Capacity Evaluations. The Administrative Law Judge further ignored the claimant's psychiatric records which described his inability to perform in social functions due to a severe impairing social anxiety. In setting forth his fourth hypothetical assuming only moderate limits in a Mental Capacity Evaluation, the ALJ substituted his opinion for all of the treating examiners plaintiff has seen since his 2003 automobile accident. Plaintiff alleges that the ALJ failed to give proper weight and deference to the opinions of plaintiff's treating physicians, both as to his physical impairments and to his mental impairments. Plaintiff also claims that the ALJ relied on a hypothetical that failed to take into account all of his impairments.

C.    Commissioner's Counter-Motion for Summary Judgment

The Commissioner argues that the ALJ properly weighed the medical source opinions of record in assessing plaintiff's mental impairment.  According to the Commissioner, plaintiff seeks to force the acceptance of a medical source opinion as the administrative finding for the RFC assessment, which is reserved to the Commissioner.  The ALJ considered Dr. Ahmad's October 2003 opinion that plaintiff was unable to lift greater than 1 pound "at this time" and that he had "not recovered sufficiently enough to return to his work duties of heavy manual labor and remains disabled for any gainful employment." (Tr. 288).  Because the ALJ determined that the limitations Dr. Ahmad offered were not supported by the medical evidence of record, the Commissioner argues that the ALJ reasonably decline to adopt them.  The ALJ also found that Dr. Ahmad's opinion provided in 2006 that plaintiff was limited to a range of sedentary work allowing unscheduled breaks as needed to lie down (Tr. 164-65), was "not supported by objective findings in the records or with treatment notes." (Tr. 25).  As the ALJ noted, "[t]he claimant was referred for neurologic consultation and given the lack of significant findings, the claimant was advised to continue with physical therapy and use of analgesics ... the claimant has no consistent neurologic losses to preclude all work activity. The most recent psychiatric examination in 2008 showed fairly intact strength in the upper and lower extremities." (Tr. 25).  The ALJ also noted that, in

November 2005, Dr. Ahmad released plaintiff from work on an indefinite basis due to social anxiety. (Tr. 25, 246, 340). The ALJ correctly pointed out that "Dr. Ahmad is a family physician and not a specialist in the area of mental health." (Tr. 25). Thus, according to the Commissioner, it was entirely reasonable for the ALJ to decline to accept to accept an opinion based on mental functioning when Dr. Ahmad was not a specialist in that area nor seeing plaintiff for that reason. (Tr. 25).

The ALJ also considered the very limiting opinions from Dr. Prasad and reasonably declined to accept them because Dr. Prasad "did not begin treating the claimant until May 2006," but, nevertheless, "reported that the claimant had moderately-severe to severe restrictions in overall functioning ... back to September 2003." (Tr. 25, 345). According to the Commissioner, while Dr. Prasad was entitled to offer a medical opinion regarding plaintiff's condition during the relevant time period, for purposes of that inquiry, he stood in the same position as any other reviewing physician. The Commissioner posits that the ALJ was required to consider the nature of Dr. Prasad's treatment relationship with plaintiff in determining the weight to afford Dr. Prasad's opinion, and he reasonably determined that the lack of a treating relationship prior to 2006 undermined Dr. Prasad's opinion regarding plaintiff's mental functioning before that time. Further, the ALJ noted that the findings contained in Dr. Prasad's

treatment notes did not support his opinion that "[o]n account of severe limitations, [plaintiff] lacked the capacity to sustain the mental demands of work." Specifically, on May 19, 2006, Dr. Prasad reported that plaintiff's appearance was well-groomed, speech was normal, motor activity was agitated, affect was normal, mood was depressed and anxious, thought processes were lucid/coherent, thought content was normal, orientation was fully oriented, memory was impaired, intelligence was average, and judgment and insight were impaired. (Tr. 214). Based on these clinical findings, Dr. Prasad assigned Plaintiff a GAF score of 69 (Tr. 216), reflecting only some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but that this GAF score meant that plaintiff was generally functioning pretty well. *See* DSM-IV, at 34. On July 24, 2006, Dr. Prasad saw plaintiff and assigned him a GAF score of 62, again indicating only mild symptoms and that he was generally functioning pretty well. (Tr. 195); *see* DSM-IV, at 34. According to the Commissioner, the ALJ reasonably concluded that the high GAF scores assigned by Dr. Prasad were inconsistent with his very limiting opinions that plaintiff lacked the capacity to sustain the mental demands of work. (Tr. 26). Additionally, the ALJ observed that "despite these severe findings, Dr. Prasad made few notations in her treatment notes and fewer changes in medication to address these symptoms." (Tr. 26). The

Commissioner argues that the lack of contemporaneous treatment notes to support

such limiting restrictions reasonably led the ALJ to not accept those limitations.

## III.    ANALYSIS AND CONCLUSIONS

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is

not found during this administrative review process, the claimant may file an

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

  If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed.Appx. 521, 526 (6th Cir. 2006).

     B.    <u>Governing Law</u>

     The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of

<blockquote>
his or her age, education, and work experience, benefits
are denied.
</blockquote>

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20

C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

The ALJ determined that plaintiff possessed the residual functional capacity

to return to a limited range of light work.  (Tr. at 22).

> Light work involves lifting no more than 20 pounds at a
> time with frequent lifting or carrying of objects weighing
> up to 10 pounds.  Even though the weight lifted may be
> very little, a job is in this category when it requires a
> good deal of walking or standing, or when it involves
> sitting most of the time with some pushing and pulling of
> arm or leg controls. To be considered capable of
> performing a full or wide range of light work, you must
> have the ability to do substantially all of these activities.
> If someone can do light work, we determine that he or
> she can also do sedentary work, unless there are
> additional limiting factors such as loss of fine dexterity or
> inability to sit for long periods of time.

20 C.F.R. 404.1567(b).  Social Security Ruling (SSR) 83-10 clarifies this

definition and provides that:

> "Occasionally" means occurring from very little up to
> one-third of the time.  Since being on one's feet is
> required "occasionally" at the sedentary level of exertion,
> periods of standing or walking should generally total no
> more than about 2 hours of an 8-hour workday, and
> sitting should generally total approximately 6 hours of an
> 8-hour workday.  Work processes in specific jobs will
> dictate how often and how long a person will need to be
> on his or her feet to obtain or return small articles.

As noted earlier, if the Commissioner's decision is supported by substantial

evidence, the decision must be affirmed even if the court would have decided the

matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

      C.    <u>Treating Physician Evidence</u>

          1.    Legal standards

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." Soc.Sec.R. 96-2p, 1996 WL 374188, *5 (1996). The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent

with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'" *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted). "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003). Courts have remanded the Commissioner's decisions when they have failed to articulate "good reasons" for not crediting the opinion of a treating source, as § 1527(d)(2) requires. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2000), citing, *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions

from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.").

Under § 404.1527(d)(2), a treating source's opinion may be rejected or given less weight where the "supportability" of the doctors opinion in insufficient, § 404.1527(d)(3), or his opinion is not "consistent" with the record as a whole, § 404.1527(d)(4). *Id.* When reviewing the ALJ's reasoning for this purpose, it is critical to remember that the Court is "reviewing the ... decision to see if it implicitly provides sufficient reasons for the rejection of [the treating source's] opinion ... not merely whether it indicates that the ALJ did reject [that] opinion." *Id.* And, where a claimant complains that the hypothetical question posed by the ALJ to the VE, which posited limitations on the claim that were less severe than those found by the treating physicians, this "is essentially no more than a different way of challenging the weight given to the opinions" of the treating sources. *Id.*

An "ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Meece v. Barnhart*, 192 Fed.Appx. 456, 465 (6th Cir. 2006), citing, *McCain v. Dir.*, *Office of Workers Comp. Programs*, 58 Fed.Appx. 184, 193 (6th Cir. 2003) (citation omitted); *see also Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play

doctor.").  "By independently reviewing and interpreting the laboratory reports the ALJ impermissibly substitute[s] his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence."  *McCain*, 58 Fed.Appx. at 193.

When evaluating the opinions of treating physicians, the ALJ must also consider, under some circumstances, contacting the treating source for clarification:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

SSR 96-5p, 1996 WL 374183, *6; *see also* 20 C.F.R. § 404.1527(c), 20 C.F.R. § 404.1512(e); *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000) (The ALJ has a duty to investigate the facts and develop the arguments both for and against granting benefits.); *D'Angelo v. Soc. Sec. Comm'r*, 475 F.Supp.2d 716 (W.D. Mich. 2007) (Where an ALJ discounts the opinions of a treating physician because the record includes virtually no medical records of plaintiff's treatment with that physician, the ALJ should perform a further investigation pursuant to SSR 96-5p.).  The regulation requires the ALJ to give good reasons for the weight given to the treating source's opinion and, if this procedural requirement is not met, a remand

may be required even if the decision is otherwise supported by substantial

evidence. *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544-45 (6th

Cir. 2004).

       2.     Analysis

     Based on the foregoing principles and standards, the undersigned concludes

that there are several significant flaws in the ALJ's weighing and evaluation of the

treating physician evidence such that a remand and further investigation is

warranted.  First, the ALJ gave little weight to Dr. Ahmad's opinions regarding

plaintiff's mental impairments because "Dr. Ahmad is a family physician and not a

specialist in the area of mental health."  (Tr. 25).  However, "[t]he regulations

merely provide that a specialist is entitled to greater weight, not that a family

practitioner is unqualified to offer an opinion regarding mental health issues."

*Moore v. Astrue*, 2008 WL 4400685, *5 (E.D. Ky. 2008).  In light of Dr. Ahmad's

ongoing treatment of plaintiff's social anxiety and depression from 2003 through

2006, the grounds for this physician's opinion are critical to evaluating the extent

of plaintiff's impairment.  The ALJ correctly observed that the treatment of

plaintiff's mental conditions from 2003-2006 and Dr. Ahmad's opinion that

plaintiff could not work from 2003 forward are not documented.  While

problematic, this is precisely the type of circumstance where the ALJ "must make

'every reasonable effort' to recontact the source for clarification of the reasons for the opinion."

In addition, the ALJ gave virtually no weight to Dr. Prasad's opinions because he did not start treating plaintiff until 2006 and because of the severity of the restrictions and limitations placed on plaintiff after only a few visits with Dr. Prasad. However, plaintiff began regular therapy in May, 2006 and Dr. Prasad first began offering his opinions in July, 2006. Thus, his initial opinions were not simply based on two or three office visits, but also on two months of therapy sessions. The ALJ also seemed to give no consideration to plaintiff's ongoing mental health treatment throughout 2006, 2007, and 2008, which is significant, given that his last date insured was December 31, 2008. Even if the ALJ properly found that the evidence of plaintiff's mental impairment was not sufficient from the period of 2003 through 2006, the level of plaintiff's mental impairment from 2006, forward, is another question altogether.

The ALJ also gave Dr. Prasad's opinions less weight because of the GAF score assigned to plaintiff by him was inconsistent with the limitations he placed on plaintiff. Such reliance on the GAF scores is misplaced for two reasons. First, the Sixth Circuit has noted that the Commissioner "has declined to endorse the [GAF] score for use in Social Security and SSI disability programs and has indicated that [GAF] scores have no direct correlation to the severity requirements

of the mental disorder listings." *Hickle v. Astrue*, 2008 WL 305013, *3 (E.D.

Tenn. 2008), quoting, *DeBoard v. Comm. of Soc. Sec.*, 211 Fed.Appx. 411 (6th Cir.

2006), quoting, 65 Fed.Reg. 50746, 50764-65 (Aug. 21, 2000) (internal quotation

marks omitted). "The GAF scores, therefore, are not raw medical data and do not

necessarily indicate improved symptoms or mental functioning." *Hickle*, at *3,

quoting, *Kennedy v. Astrue*, 2007 WL 2669153, *5 (6th Cir. 2007).[2]  Second, this

presents another circumstance where the ALJ could have sought clarification from

Dr. Prasad regarding the bases of his opinions and any potential inconsistency.

Under the circumstances, a remand is warranted.

As to plaintiff's physical limitations, the undersigned is perplexed as to the

ALJ's failure to note the significance of the consultative examination of Todd Best,

M.D., from April 2008, in which he opined that plaintiff was totally and

permanently disabled.  Granted, the ultimate issue of disability is reserved to the

Commissioner, but Dr. Best's extensive physician examination and conclusions are

supported by objective medical evidence, and are consistent with Dr. Ahmad's

opinions.  In December of 2003, Dr. Ahmad reported that she had seen plaintiff

since his automobile accident in September 2003, and that plaintiff had a left

---

[2]  The undersigned notes that the Commissioner frequently argues in this Court, when GAF scores assigned to claimants are low, that the Court should not place such significance on them.

shoulder strain with radicular symptoms. (Tr. 279). She indicated that plaintiff was still having severe left shoulder pain with strain of the left shoulder muscles and estimated that plaintiff could return to work on February 1, 2004. (Tr. 281). On November 10, 2005, however, Dr. Ahmad wrote a note excusing plaintiff from work indefinitely due to social anxiety, as discussed above, and also indicated that plaintiff was permanently disabled due to cervical strain and degenerative joint disease. (Tr. 245). Dr. Ahmad's records show that plaintiff was continuously treated for right elbow and left shoulder pain as well as monitoring his medications for the lumbar and cervical orthopedic injuries. (Tr. 124-125, 163-166, 224-320). Objective medical studies show degenerative disc disease involving the lumbar spine at the lower levels with disc dehydration in addition to disc bulging. MRI studies of the shoulder also show an under surface rotator cuff tear and AC joint arthrosis. Electrodiagnostic studies show a left C3-C4 radiculopathy and bilateral knee median mononeuropathies (carpal tunnel syndrome), cervical MRI's show a moderately central bulging disc at C4-C5 and to a lesser extent at the C3-C4 level with disc dehydration and degenerative changes. (Tr. 125, 165, 285, 291, 293-294, 299). These physical conditions are all confirmed by Dr. Best. (Tr. 326-329). Again, the ALJ did not consider whether and to what extent plaintiff's condition or impairments changed or worsened between when Dr. Ahmad offered her 2005 opinion that he was disabled from all work and when Dr. Best offered his opinion

regarding plaintiff's limitations and impairments in 2008. Given that plaintiff's last date insured was December 31, 2008, this evaluation could be critical.

While the government asserts that plaintiff did not raise or preserve the issue of any errors by the ALJ on credibility issues, in the view of the undersigned, the ALJ's evaluation of plaintiff's physical limitations is inextricably intertwined with the credibility assessment, which was more focused on the credibility of plaintiff's treating physicians, and not on plaintiff's credibility. The ALJ made his findings as to plaintiff's residual functional capacity and then, in evaluating the medical evidence, determined that the limitations and impairments as stated by his treating physicians were not fully credible. (Tr. 22-26). Plaintiff was asked virtually no questions at the hearing about his physical limitations and the ALJ did not explain whether and to what extent plaintiff's statements regarding the impact of his difficulty sleeping, which is well-documented in the record, had on his ability to work. Moreover, the ALJ, in commenting on plaintiff's credibility as it relates to pain symptoms, must follow the requirements of, among other provisions, 20 C.F.R. § 404.1529 as well as SSR 96-7p, which provides, in part:

> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to

the objective medical evidence when assessing the credibility of an individual's statements:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

The ALJ did not even question plaintiff about most of these factors and certainly did not explain why he did not take them into account in assessing plaintiff's credibility and impairments. Thus, given that it is simply impossible for the ALJ to re-evaluate the treating physician evidence and consultative opinions without evaluating plaintiff's pain and other credibility issues, the undersigned concludes that plaintiff's credibility must be re-assessed as well.

D.    Conclusion

After review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, was not within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is unsupported by substantial evidence. While this record may not justify a remand for an award of benefits, *see Faucher v. Sec'y of Health and Human Serv.*, 17 F.3d 171, 176 (6th Cir. 1994),[3] a remand is nonetheless required.

## IV.    RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED**, and that the findings of the Commissioner be **REVERSED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

---

[3] "If a court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits *only if* all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176 (emphasis added).

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

|  | s/Michael Hluchaniuk |
|---|---|
| Date: August 13, 2010 | Michael Hluchaniuk |
|  | United States Magistrate Judge |

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 13, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Kenneth D. Clayton, Kenneth L. Shaitelman, AUSA, and Commissioner of Social Security</u>.

s/Darlene Chubb
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov